1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

LIBERTY MUTUAL INSURANCE
COMPANY, et al.,

CASE NO. C20-0309JLR

11

ORDER

Plaintiffs,

12

v.

13

BENJAMIN LANGE, et al.,

14

Defendants.

15

16

## I.    INTRODUCTION

17      Before the court is Plaintiffs Liberty Mutual Insurance Company and Liberty

18   Insurance Company's (collectively, "Liberty Mutual") motion for summary judgment.

19   (MSJ (Dkt. # 52); Reply (Dkt. # 58).)  Defendants Benjamin Lange and Carolyn Lange

20   (collectively, the "Langes") oppose the motion, request attorneys' fees and costs, and ask

21   the court to strike certain material in Liberty Mutual's reply.  (Resp. (Dkt. # 56); Surreply

22   (Dkt. # 60).)  The court has reviewed the parties' submissions, relevant portions of the

1   record, and applicable law.  Being fully advised,[1] the court GRANTS in part and

2   DENIES in part Liberty Mutual's motion for summary judgment, GRANTS the Langes'

3   motion to strike, and DENIES the Langes' request for fees and costs.

4                             **II.     BACKGROUND**

5         This lawsuit arises out of a dispute between the parties regarding Liberty Mutual's

6   duty to defend the Langes in separate state court proceedings (the "Underlying Dispute")

7   brought by their adopted daughter, C.L.  (*See* Praecipe (Dkt. # 19), Ex. 1 ("Underlying

8   Compl.").)  The court reviews the relevant, undisputed factual and procedural

9   background in the instant and underlying disputes as well as the relevant portions of the

10   operative insurance policies.

11   **A.     The Underlying Dispute**[2]

12         The Langes served as foster parents for C.L. between 2002 and 2004, and formally

13   adopted C.L. and her biological sister, S.L. in 2004.  (Underlying Compl. ¶¶3.2, 3.9);

14   *C.L. v. Wash. State Dep't of Soc. & Health Servs.*, 402 P.3d 346, 348 (Wash. Ct. App.

15   2017) (noting C.L.'s adoption by the Langes was approved on August 24, 2004.  C.L.

16   alleges that two of the Langes' biological sons, Dillon and Colten Lange, sexually abused

17   her "for many years."  (Underlying Compl. ¶ 3.11.)  The sexual abuse continued until

---

[1] Neither party has requested oral argument (*see* MSJ at 1; Resp. at 1), and the court has determined that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court must typically limit its analysis to the factual allegations alleged in the underlying complaint when determining whether the insurer has a duty to defend.  *See Nat'l Union Fire Ins. Co of Pittsburgh, PA v. Coinstar, Inc.*, 39 F. Supp. 3d 1149, 1156 (W.D. Wash. 2016); (*see also infra* § III.B.3).  However, the Underlying Complaint largely lacks the level of factual detail necessary to resolve the instant motion.  (*See generally* Underlying Compl.)  The court thus includes undisputed facts from the record in the Underlying Dispute where necessary.

2008.  (*See* MSJ at 3; Resp. at 6 (both citing *C.L.*, 402 P.3d at 349)); *see also The Standard Fire Ins. Co. v. Lange*, No. C20-0092JLR-MLP, 2020 WL 6083452, at *3-4 (W.D. Wash. Sept. 29, 2020), *report and recommendation adopted*, No. C20-0092JLR, 2020 WL 6079176, at *1 (W.D. Wash. Oct. 15, 2020) (referencing Dillon and Colten Langes' guilty pleas to charges related to the sexual abuse of C.L. between 2003 and 2008).[3]  C.L. has testified that she told Ms. Lange about the sexual abuse in 2011, but that Ms. Lange did not believe her and told her that if any abuse did occur, C.L. should forgive Dillon.  *C.L.*, 402 P.3d at 349.  C.L. told a friend and the friend's mother about the abuse in August 2013; the friend's mother contacted Child Protective Services ("CPS"), and C.L. did not return to live in the Langes' home.  *Id*.  Shortly thereafter, C.L. returned to the Lange home to collect her belongings and found them in garbage bags outside the home, with C.L.'s face scratched out of photographs.  (6/5/23 Carr Decl. (Dkt. # 57) ¶ 5, Ex. D ("C.L.'s Resp. to Defs' 3d MSJ") at 22.[4])

C.L. further alleges that Ms. Lange directed S.L. to falsely accuse C.L. of abuse.  (*Id*.)  CPS ultimately removed C.L.'s sister, S.L., from the home in November 2013.  *C.L.*, 402 P.3d at 349.  Later, in 2017, C.L. learned that Dillon had sexually assaulted a young cousin years before C.L. joined the Lange household, but that Ms. Lange did not disclose the incident to the Department of Social and Health Services ("DSHS") in her

---

[3] *Standard Fire* is a related case in which the undersigned determined that a separate insurer, which carried the Langes' insurance policies for a different period, had no duty to defend the Langes in the Underlying Dispute.  *Standard Fire*, 2020 WL 608452.

[4] The court uses the page numbers in the CM/ECF header when citing to the parties' exhibits.

1  foster care application or during the adoption process.  (*See* 6/5/23 Carr Decl. ¶ 4, Ex. C
2  ("7/7/20 Transcript") at 17.)

3      C.L. accuses both Benjamin and Carolyn Lange of failing to protect her from
4  sexual abuse by Dillon and Colten.  (Underlying Compl. ¶ 4.10.)  C.L. also alleges that
5  Benjamin and Carolyn each failed to protect her from various forms of abuse by the
6  other.  *See Standard Fire*, 2020 WL 6083452, at *1.  C.L. alleges that while she was
7  living in the Langes' home, Ms. Lange forced her to pull down her pants and grab her
8  ankles while Ms. Lange struck her with items such as a leather belt and metal kitchen
9  ladle.  *Id*.  C.L. further alleges Mr. Lange molested her once, and that Ms. Lange failed to
10  protect her from this abuse.  *Id*.

11     C.L. filed suit against the Langes in November 2017 in Whatcom County Superior
12  Court.  (*See* Underlying Compl.)  C.L. alleges that the Benjamin and Carolyn Lange:
13  (1) had a duty to protect and care for C.L.; (2) owed a duty of reasonable care to C.L.;
14  (3) were negligent in their actions and/or omissions relating to C.L.; (4) engaged in
15  willful and wanton conduct relating to C.L.; (5) negligently inflicted emotional distress;
16  (6) are liable for outrage; and (7) breached their duties of care to C.L.  (*Id*. ¶¶ 3.3-3.4, 3.8,
17  4.1-4.8.)  C.L. alleges "the negligence of Benjamin and Carolyn Lange was a direct and
18  proximate cause of severe and permanent injuries to C.L." (*id*. ¶ 4.9), and that the Langes
19  "are each liable under RCW 9.68A.130 for facilitating the abuse and neglect of
20  C.L. . . . particularly with respect to Colten and Dillon Lange's communications with a
21  minor for immoral purposes" (*id*. ¶ 4.10).  *See also* RCW 9.68A.130 (providing a cause
22  of action to sexually exploited minors).  C.L. seeks damages for the Langes' alleged

"negligence and/or other tortious conduct [that] began in 2002 and lasted through at least 2016." (*Id.* ¶ 4.7.)  C.L. states that she is traumatized by the abuse she endured and, "as a consequence of her placement into this predatory environment, C.L. faces a lifetime of PTSD, sexual aversion, flashbacks, paranoid ideation, and anxiety." (C.L.'s Resp. to Defs' 3d MSJ at 20.)

Discovery in the Underlying Dispute is now closed and C.L. and the Langes have each filed several summary judgment motions. (*See* Resp. to Mot. to Lift Stay (Dkt. # 46) at 8.)  The trial court proceedings are currently stayed while the Washington State Court of Appeals decides whether C.L. can pursue damages for sexual abuse from the Langes for which she also recovered in her case against DSHS. (*Id.* at 4-5.)

**B.   Procedural Background of the Instant Dispute and the Liberty Mutual Insurance Policies**

The Langes obtained two insurance policies from Liberty Mutual:  (1) a homeowner policy effective May 29, 2015 through May 29, 2018 (the "Homeowner Policy") (5/4/23 Chavez Decl. (Dkt. # 54) ¶ 4 & Ex. 2 ("Homeowner Policy")), and (2) an excess coverage policy effective May 29, 2015 through July 11, 2016 (the "Umbrella Policy") (collectively, the "Insurance Policies") (*id.* ¶ 5 & Ex. 3 ("Umbrella Policy")).  The Langes filed a claim for coverage in the Underlying Dispute and Liberty Mutual found no coverage under either insurance policy. (*See* 5/4/23 Chavez Decl. ¶ 3, Ex. 1 ("Reservation of Rights Letter") at 2.)  Liberty Mutual agreed to defend the Langes in the Underlying Dispute under a full reservation of rights. (*Id.* at 2, 6-8 (describing bases for denial of coverage).)

1    Liberty Mutual filed the instant action on February 26, 2020, seeking a declaratory

2  judgment that it has no duty to defend or indemnify the Langes in the Underlying

3  Dispute.  (Compl. (Dkt. # 1) ¶¶ 31-33.)  On November 17, 2020, the court granted the

4  parties' stipulated motion to stay the case while litigation in the Underlying Dispute

5  proceeded.  (11/17/20 Order (Dkt. # 31).)  The undersigned lifted the stay on March 23,

6  2023 on Liberty Mutual's motion, over the Langes' objections.  (3/23/23 Order (Dkt.

7  # 49).)

8    The court now reviews the relevant provisions of the Homeowner Policy and

9  Umbrella Policy that Liberty Mutual issued to the Langes.

10    1.  <u>The Homeowner Policy</u>

11  The Homeowner Policy provides the following inclusionary provision:

12  If a claim is made or a suit is brought against an **insured** for damages because
   of **bodily injury** or **property damage** caused by an **occurrence** to which
13  this coverage applies, we will:

14    1.  Pay up to our limit of liability for the damages for which the **insured** is
       legally liable; and

15
16    2.  Provide a defense at our expense by counsel of our choice even if the
       allegations are groundless, false or fraudulent

17  (Homeowner Policy at 10-11 (emphasis in original).)  The Homeowner Policy also

18  contains the following definitions, in relevant part:

19    1.  "**bodily injury**" means bodily harm, sickness, disease except a disease
       which is transmitted through sexual contact.  "**Bodily injury**" includes
20       required care, loss of services, and death resulting from covered bodily
       harm, sickness or disease.

21    . . . .

22

3.  "**insured**" means you and residents of your household who are: (a) your relatives; or (b) other persons under the age of 21 and in the care of any person named above.

. . . .

5.  "**occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:  (a) **bodily injury**; or (b) **property damage**.

(*Id*. at 8 (emphasis in original).)  The Homeowner Policy contains the following exclusion:

1.  **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to **bodily injury** or **property damage**:  (a) which is expected or intended by the **insured**

(*Id*. at 11 (emphasis in original).)  The Homeowner Policy contains the following condition:

1.  **Policy Period**.  This policy applies only to loss . . . or **bodily injury** . . . which occurs during the policy period.

(*Id*. at 15 (emphasis in original).)  The policy period for the Homeowner Policy was May 29, 2015 through May 29, 2018.  (5/4/23 Chavez Decl. ¶ 4.)

2.  The Umbrella Policy

The Umbrella Policy provides the following liability insuring provision:

**COVERAGE – PERSONAL EXCESS LIABILITY**

We will pay all sums in excess of the **retained limit** and up to our limit of liability for damages because of **personal injury** or **property damage** to which this policy applies and for which the **insured** is legally liable.

(Umbrella Policy at 9 (emphasis in original).)  The Umbrella Policy contains the following provision regarding defense coverage:

> If a suit is brought against any **insured** for **personal injury** or **property damage** covered by this policy, but not covered by any **underlying policy** or any other insurance, we will:  (a) defend any **insured**, even if the suit is groundless or fraudulent.

(*Id*. at 11 (emphasis in original).)  The Umbrella Policy contains the following relevant definitions:

> Throughout this policy "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household.
>
> 3. "**insured**" means you and the following:
>
> (a) residents of your household, but only if:  (1) related to you by blood, marriage or adoption; or (2) under the age of 21 and in the care of anyone named above . . . ;
>
> (b) any person or organization insured under any **underlying policy** for **personal injury** or **property damage**, but only when the limits of the **underlying policy** are exhausted.
>
> . . . .
>
> 5. "**personal injury**" means all forms of personal injury.  This also includes bodily injury and sickness or death at any time resulting therefrom.
>
> . . . .
>
> 11. "**occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: (a) "**Personal Injury**" . . . .

(*Id*. at 8-9 (emphasis in original).)  The Umbrella Policy contains the following exclusions:

> This policy does not apply to **personal injury** or **property damage**:
>
> (a) which is either expected or intended by any **insured**.  This exclusion does not apply to **personal injury** resulting from an act committed to protect persons or property.
>
> . . . .

ORDER - 8

(q) arising out of any actual or threatened sexual molestation, corporal punishment or physical or mental abuse, including the failure to detect, prevent, stop or report such molestation, punishment or abuse by others.

(*Id.* at 9-10 (emphasis in original).)  The Umbrella Policy contains the following relevant condition:

1.  **Policy Period**:  This policy applies only to **personal injury** or **property damage** which occurs during the policy period.

(*Id.* at 11 (emphasis in original).)  The policy period for the Umbrella Policy was May 29, 2015 through July 11, 2016.  (5/4/23 Chavez Decl. ¶ 5.)

### III.    ANALYSIS

The court first addresses the Langes' motion to strike and then reviews the legal standards applicable to Liberty Mutual's motion for summary judgment before turning to consider the merits of Liberty Mutual's motion.

### A.    Motion to Strike

The Langes move to strike Liberty Mutual's argument that the "known loss" principle precludes insurance coverage for the Langes in the Underlying Dispute. (Surreply; *see also* Reply at 6.)  The Langes argue that because Liberty Mutual raised the argument for the first time on reply, the Langes did not have an opportunity to respond to the argument and it should therefore be stricken.  (Surreply at 1-2.)

Courts have discretion to strike portions of the reply that raise new issues or evidence.  *See, e.g.*, *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) (striking new evidence raised on reply); *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1208, 1214 (W.D. Wash. 2003) (same); *see also* Local Rules W.D.

1   Wash. LCR 7(g) (setting forth procedures for moving to strike material contained in a

2   reply brief).  The court must therefore determine whether Liberty Mutual raised the

3   "known loss" principle for the first time on reply.  *See Tovar*, 3 F.3d at 1273 n.3.

4       The "known loss" or "known risk" principle prevents an insured from collecting

5   on an insurance claim "for a loss that the insured subjectively knew would occur at the

6   time the insurance was purchased."  *Pub. Util. Dist. No. 1 of Klickitat Cnty. v. Int'l Ins.*

7   *Co.*, 881 P.2d 1020, 1030 (Wash. 1994) (rejecting insurer's argument that known risk

8   allows denial of coverage "if an insured has knowledge of any potential liability at the

9   time the policy is issued").  Although Liberty Mutual argues in its summary judgment

10  motion that the alleged abuse occurred before the policy periods (*see* MSJ at 18-20), it

11  does not explicitly invoke the "known loss" principle or argue that the Langes

12  "subjectively knew" of the loss at issue here—i.e., the need to defend against C.L.'s 2017

13  lawsuit—until its reply (*see generally id.*; *see* Reply at 6).  Accordingly, the court agrees

14  with the Langes that Liberty Mutual impermissibly first raised the "known loss"

15  argument on reply.  (*See* Reply); *Tovar*, 3 F.3d at 1273 n.3.  The court therefore

16  STRIKES the material contained on page 6, lines 4-11 of Liberty Mutual's reply brief.[5]

17  **B.   Legal Standards**

18      Liberty Mutual seeks summary judgment with respect to its duties to defend and

19  indemnify the Langes in the Underlying Dispute under the Homeowner and Umbrella

20  Policies.  (MSJ at 2.)  The court reviews legal standards for summary judgment,

21

22
---
[5] Moreover, arguments first raised on reply are waived.  *See Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012).

1   insurance policy interpretation, and an insurer's duties to defend and indemnify.

2       1.  Summary Judgment Legal Standard

3       Summary judgment is appropriate if the evidence, when viewed in the light most

4   favorable to the non-moving party, demonstrates there is no genuine issue of material

5   fact.  Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A

6   dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict

7   for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

8   fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

9   A dispute is "genuine" if "the evidence is such that a reasonable jury could return a

10  verdict for the nonmoving party."  *Id.*

11      The moving party bears the initial burden of showing that there is no genuine

12  dispute of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477

13  U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial,

14  it nevertheless "has both the initial burden of production and the ultimate burden of

15  persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co. v. Fritz*

16  *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of

17  production, the moving party must either produce evidence negating an essential element

18  of the nonmoving party's claim or defense or show that the nonmoving party does not

19  have enough evidence of an essential element to carry its ultimate burden of persuasion at

20  trial."  *Id.*  If the moving party meets its burden of production, the nonmoving party can

21  prevail by identifying specific facts from which a factfinder could reasonably find in the

22  nonmoving party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

1    The court is "required to view the facts and draw reasonable inferences in the light

2    most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

3    The court may not weigh evidence or make credibility determinations in analyzing a

4    motion for summary judgment because these are "jury functions, not those of a judge."

5    *Anderson*, 477 U.S. at 249-50.  Nevertheless, the nonmoving party "must do more than

6    simply show that there is some metaphysical doubt as to the material facts . . . . Where

7    the record taken as a whole could not lead a rational trier of fact to find for the

8    nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal

9    quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

10   475 U.S. 574, 586-87 (1986)).

11       2.   Insurance Policy Interpretation

12       The court construes an insurance policy as a contract, and the interpretation of that

13   contract is a question of law.  *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1141-

14   42 (Wash. 1984).  Policies must be construed as a whole and the terms within "given a

15   'fair, reasonable, and sensible construction as would be given to the contract by the

16   average person purchasing insurance.'"  *Weyerhaeuser Co. v. Commercial Union Ins.*

17   *Co.*, 15 P.3d 115, 122 (Wash. 2000) (quoting *Am. Nat'l Fire Ins. Co. v. BL Trucking*

18   *Constr. Co.*, 951 P.2d 250 (Wash. 1998)).  The court is bound by definitions provided in

19   the policy.  *Austl. Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 198 P.3d 514, 517 (Wash. Ct.

20   App. 2008) (citing *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 326 (Wash. 2002)).

21   Undefined terms in a policy are interpreted by courts based on their ordinary meaning or

22   common law definitions.  *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511

1   (Wash. 1990) (stating that courts may look to the dictionary to determine the common

2   meaning of an undefined term); *see also Detweiler v. J.C. Penny Cas. Ins. Co.*, 751 P.2d

3   282, 284-85 (Wash. 1988) ("Where, as here, the word 'accident' is not otherwise defined

4   in a policy, we look to our common law for definition.").  Where the language is clear,

5   the court must enforce the policy as written and may not create ambiguity where none

6   exists.  *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005).  A clause

7   is ambiguous only if it is susceptible to two or more reasonable interpretations.  *Id*.  Any

8   ambiguity is resolved in favor of the insured.  *Id*.

9     The insured has the initial burden to show the insurance policy covers its loss.

10  *Overton*, 38 P.3d at 329 (citing *McDonald v. State Farm Fire & Cas. Co*., 837 P.2d 1000,

11  1003-04 (Wash. 1992)).  Thereafter, to avoid coverage, the insurer must prove that

12  specific policy language excludes the insured's loss.  *Id*.  However, exclusionary clauses

13  "are to be most strictly construed against the insurer."  *Am. Best Food, Inc. v. Alea*

14  *London, Ltd.*, 229 P.3d 693, 697 (Wash. 2010) (quoting *Phil Schroeder, Inc. v. Royal*

15  *Globe Ins. Co.*, 659 P.2d 509 (Wash. 1983)).

16     3.   Duty to Defend Legal Standard

17    An insurer has a duty to defend "when a complaint against the insured, construed

18  liberally, alleges facts which could, if proven, impose liability upon the insured within the

19  policy's coverage."  *Woo v. Fireman's Fund Ins. Co*., 164 P.3d 454, 459 (Wash. 2007)

20  (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 58 P.3d 276, 281-82 (Wash. 2002)).

21  An insurer's duty to defend is based on "the *potential for liability*," and is triggered if the

22  policy "*conceivably covers* the allegations in the complaint."  *Id*. (emphases in original)

1   (internal citations omitted).  In Washington, an insurer's "duty to defend generally is

2   determined from the 'eight corners' of the insurance contract and the underlying

3   complaint," particularly where, as here, the underlying litigation is ongoing.  *Coinstar*, 39

4   F. Supp. 3d at 1156 (quoting *Expedia, Inc v. Steadfast Ins. Co.*, 329 P.3d 59, 64 (Wash.

5   2014)).  If the allegations in the complaint are contradictory or ambiguous, or if coverage

6   is unclear, the insurer may rely on extrinsic facts.  *Truck Ins. Exch.*, 58 P.2d at 282.

7   However, the insurer may not rely on extrinsic facts "to deny the duty to defend—it must

8   do so only to trigger the duty."  *Woo*, 164 P.3d at 459.

9       4.  Duty to Indemnify Legal Standard

10      The insurer's duty to indemnify the insured is narrower than its duty to defend; it

11  "hinges on the insured's *actual liability* to the claimant and *actual coverage* under the

12  policy."  *Woo*, 164 P.3d at 459 (citing *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d

13  1167, 1171 (Wash. 2000)) (emphasis in original).  If there is no duty to defend, then there

14  is no duty to indemnify.  *See id*.  If the insurer has a duty to defend, the court cannot

15  evaluate the insurer's duty to indemnify until the insured's "actual liability" is determined

16  in the underlying action.  *See, e.g.*, *Indian Harbor Ins. Co. v. City of Tacoma Dep't of*

17  *Pub. Utils.*, 354 F. Supp. 3d 1204, 1215 (W.D. Wash. 2018) (finding it premature to

18  determine the duty to indemnify before the underlying lawsuit concluded).

19  **C.**   **Whether Liberty Mutual has a Duty to Defend the Langes**

20      Liberty Mutual argues that none of C.L.'s claims are potentially covered under the

21  Insurance Policies for four reasons:  (1) there was no "bodily injury" during any policy

22  period; (2) C.L.'s injuries were not caused by an "accident"; (3) C.L.'s claims are subject

1   to the policies' exclusions for expected or intended harm; and (4) C.L.'s injuries are

2   subject to the Umbrella Policy's abuse exclusion.  (*See* MSJ at 2-3, 16-26.)  The court

3   addresses each argument in turn.

4       1.   Whether C.L. Alleges a Bodily Injury During a Policy Period

5       Liberty Mutual asserts that C.L.'s harms do not amount to a covered "occurrence"

6   because she does not allege a "bodily injury" within any policy period.  (*See* MSJ at

7   16-21.)  The court begins by reviewing the relevant policy terms and Washington courts'

8   interpretations of similar terms before turning to the parties' arguments.

9       The insurance policies define "occurrence" as "an accident, . . . which results,

10   during the policy period, in:  **bodily injury**."  (Homeowner Policy at 8 (emphasis in

11   original); *see also* Umbrella Policy at 9 (defining "occurrence" as "an accident, . . . which

12   results, during the policy period, in:  **personal injury**" (emphasis in original)).)  The

13   Homeowner Policy defines "bodily injury" as "bodily harm, sickness, disease" and the

14   Umbrella Policy defines "personal injury" broadly to mean "all forms of personal injury"

15   including "bodily injury and sickness or death at any time resulting therefrom."

16   (Homeowner Policy at 8; Umbrella Policy at 8.)  The policy period for the Homeowner

17   Policy was May 29, 2015 through May 29, 2018, and the policy period for the Umbrella

18   Policy was May 29, 2015 through July 11, 2016.  (5/4/23 Chavez Decl. ¶¶ 4-5.)

19       Washington courts interpret "bodily injury" to include "emotional injuries that are

20   accompanied by physical manifestations."  *Trinh v. Allstate Ins. Co.*, 37 P.3d 1259, 1264

21   (Wash. Ct. App. 2002); *see also Grange Ins. Ass'n v. Roberts*, 320 P.3d 77, 88 (Wash. Ct.

22   App. 2013) (recognizing that "damages for bodily injury include damages for emotional

1    distress if that distress arises as a result of a physical injury"). In *Trinh v. Allstate Ins.*

2    *Co.*, as here, the insurance policy defined "bodily injury" to mean "'sickness' or

3    'disease.'" *Compare* 37 P.3d at 1264, *with* (Homeowner Policy at 8 ("'bodily injury'

4    means bodily harm, sickness, disease" (emphasis removed))).  The Langes bear the initial

5    burden of establishing that the policies cover their losses, *Overton*, 38 P.3d at 329, but the

6    court will construe any ambiguous terms in the policies in the Langes' favor, *Quadrant*,

7    110 P.3d at 737.

8         Liberty Mutual argues that because the alleged incidents in the Underlying

9    Dispute occurred between 2002 and 2013, when C.L. lived with the Langes, there was no

10   covered "bodily injury" during the policy periods.  (*See* MSJ at 18-21, 23-24; Reply at

11   3-6.)  The Langes first argue that by their plain language, the policies cover harm if "the

12   bodily injury—not the accident causing the bodily injury—occurs during the policy

13   period."  (Resp. at 10 (quoting Homeowner Policy at 8 (defining "occurrence" as "an

14   accident, . . . which results, during the policy period, in: **bodily injury**" (emphasis in

15   original))).)  The Langes argue the policies are at best ambiguous and should therefore be

16   construed in their favor.  (*Id.* at 10-11; *see also* Reply (not refuting this construction of

17   "occurrence").)  The Langes next argue that C.L.'s allegations that (1) the Langes'

18   negligent and tortious conduct "lasted through at least 2016,"[6] and (2) C.L. learned of the

19

20   _____

         [6] Liberty Mutual repeatedly argues that C.L.'s inclusion of "2016" is "clearly a
     scrivener's error," because the Underlying Complaint and extrinsic evidence describe harm from
21   conduct that occurred while C.L. lived in the Lange home, between 2002 and 2013.  (MSJ at
     19-20; Reply at 4-5.)  The court declines to rely on Liberty Mutual's assumption that a material
     allegation in the Underlying Dispute is a scrivener's error.  *See Woo*, 164 P.3d at 459
22   (prohibiting insurer from relying on extrinsic facts to deny the duty to defend).  Regardless,

1   Langes' negligent misrepresentations in 2017 each establish that C.L.'s harms

2   conceivably occurred during a policy period.  (Resp. at 12, 14; *see* Underlying Compl.

3   ¶ 4.7; 7/7/20 Transcript at 17.)  Finally, the Langes assert that C.L. alleges she displayed

4   physical symptoms of emotional distress during the policy period and admonish that "the

5   exact nature and manifestation of C.L.'s injuries is hotly disputed."  (Resp. at 15.)

6        The court concludes that the policies' definition of "occurrence" is susceptible to

7   more than one meaning and that the Langes' interpretation is reasonable.  *See Quadrant*,

8   110 P.3d at 737 (advising that any ambiguity must be resolved in favor of the insured).

9   Had Liberty Mutual intended to limit coverage to an "accident" that "occurs during the

10  policy period," it could have drafted the definition of "occurrence" more precisely.  *See*

11  *id.*; (*see also* Reply (not contesting the Langes' interpretation)).  Therefore, to the extent

12  C.L. alleges that she suffered, as a result of an "accident" (*see infra* § III.C.2), physical

13  manifestations of emotional distress during the policy periods, her claims are conceivably

14  covered by both insurance policies.  (*See, e.g.*, Underlying Compl. ¶ 4.7 (alleging the

15  Langes' harmful conduct "lasted through at least 2016")); *see also Woo* 164 P.3d at 459

16  (noting the duty to defend is triggered if the policy "conceivably" covers the allegations

17  in the complaint).[7]  Under the same conditions, C.L.'s claim that she suffered harm in

18  2017 when she learned of Ms. Lange's alleged misrepresentations to DSHS is

19

20  ───────────────

    Liberty Mutual must defend the Langes "even if the allegations are groundless, false or
21  fraudulent."  (Homeowner Policy at 11; *see also* Umbrella Policy at 11 (same).)

         [7] Moreover, to the extent "the exact nature and manifestation of C.L.'s injuries is hotly
22  disputed" (*see* Resp. at 15), the court must deny Liberty Mutual's motion due to a dispute of
    material fact, *see Anderson*, 477 U.S. at 248.

1  conceivably covered by the Homeowner Policy, but not the Umbrella Policy.  (*See* 5/4/23

2  Chavez Decl. ¶¶ 4-5 (noting the Homeowner Policy was cancelled in 2018 and the

3  Umbrella Policy was canceled in 2016).)  However, Liberty Mutual has no duty to defend

4  against C.L.'s claims for which she does not allege a bodily injury during either policy

5  period.

6      2.   Whether an "Accident" Proximately Caused C.L.'s Alleged Injuries

7      Liberty Mutual argues that C.L.'s alleged harms are not covered by either

8  insurance policy because none were caused by an "accident."  (MSJ at 21-24; Reply at

9  10-14.)  The court begins by reviewing the relevant policy terms and Washington courts'

10  interpretations of similar terms, before turning to the parties' arguments.

11      The Homeowner Policy provides coverage for "**bodily** injury . . . caused by an

12  **occurrence**" and, as noted above, defines "occurrence" in relevant part as "an accident."

13  (Homeowner Policy at 8, 10-11 (emphasis in original).)  The Umbrella Policy definitions

14  are materially the same.  (*See* Umbrella Policy at 8-9.)  The court must interpret

15  "accident" in the inclusionary clauses liberally in favor of the Langes.  *See Pac. Ins. Co.*

16  *v. Cath. Bishop of Spokane*, 450 F. Supp. 2d 1186, 1201 (E.D. Wash. 2006) (citing *Port*

17  *of Seattle v. Lexington Ins. Co.*, 48 P.3d 334 (Wash. 2002)).  Washington courts define an

18  "accident" for purposes of insurance coverage as "an unusual, unexpected, or unforeseen

19  happening."  *Allstate Ins. Co. v. Bauer*, 977 P.2d 617, 620 (Wash. Ct. App. 1999).

20  Moreover, "an accident is never present when a deliberate act is performed unless some

21  additional unexpected, independent and unforeseen happening occurs which produces or

22  brings about the result of injury or death."  *Unigard Mut. Ins. Co. v. Spokane Sch. Dist.*

*81*, 579 P.2d 1015, 1018 (Wash. Ct. App. 1978); *accord Detweiler*, 751 P.2d at 284-85.

Under Washington law, negligent failure to protect against abuse by another can be a

covered occurrence or accident.  *See, e.g.*, *W. Protectors v. Shaffer*, 624 F. Supp. 2d

1292, 1299-300 (W.D. Wash. 2009) (finding duty to defend grandmother against claims

for negligent failure to protect her grandchildren in her care from sexual abuse); *Standard*

*Fire*, 2020 WL 6083452, at *5 (finding it "conceivable that the Policies cover the

allegations that [Mr.] Lange failed to protect C.L. from [Ms.] Lange's abuse" and

collecting cases).

Liberty Mutual asserts that none of the harms C.L. alleges were the result of an

"accident," arguing that sexual abuse is "intentional" as a matter of law, and that "C.L.'s

claims of abuse and corporal punishment were not unexpected."  (MSJ at 21-23; Reply at

10-14.)  The Langes respond that C.L.'s claims involving the Langes' alleged negligence

satisfy the definitions of "accident" or "occurrence."  (Resp. at 20-22.)

Construing the terms in the Langes' favor, *Cath. Bishop*, 450 F. Supp. 2d at 1201,

the court concludes that because C.L.'s negligence-based claims allege harms that were

unintended by the Langes, they are conceivably covered by the policies.  (*See* Underlying

Compl. ¶¶ 4.1-.3, 4.5, 4.8-.9.)  Thus, C.L.'s claims for negligent misrepresentation,

negligent infliction of emotional distress ("NIED"), and negligent failure to protect her

from abuse are "accidents" conceivably covered by the Homeowner and Umbrella

Policies. *See Standard Fire*, 2020 WL 6083452, at *5 (construing similar policy terms to

conclude that "the Langes have met their burden of showing an 'occurrence' for the

claims regarding their alleged misrepresentations and omissions to DSHS and failure to

protect C.L."); (*see also supra* § III.C.1 (concluding that physical manifestations of emotional distress that occurred during the policy period as a result of "an occurrence" are conceivably covered)).  However, C.L.'s claims involving intentional conduct by the Langes—including her claim for outrage and claims that the Langes abused her and "engaged in willful and wanton misconduct" toward her—were not "accidents" and are not covered by any policy.  (*See* Underlying Compl. ¶¶ 4.4, 4.6.)

    3.  Whether the Insurance Policies' "Expected or Intended" Exclusions Preclude Coverage

The Homeowner Policy provides that coverage "do[es] not apply to **bodily injury** . . . which is expected or intended by the **insured**."  (Homeowner Policy at 11 (emphasis in original).)  Similarly—but not identically—the Umbrella Policy "does not apply to **personal injury** . . . which is either expected or intended by any **insured**." (Umbrella Policy at 9-10 (emphasis in original).)  Liberty Mutual bears the burden of proving the exclusions apply, *Overton*, 38 P.3d at 329, and the court must strictly construe the clauses against Liberty Mutual, *Cath. Bishop*, 450 F. Supp. 2d at 1201.

Liberty Mutual argues that the exclusions apply because "C.L.'s claims of physical abuse, sexual abuse, and corporal punishment[] constitute 'intentional acts'" and both policies "exclude liability coverage for injuries resulting from the intentional acts of an insured."  (MSJ at 23-24.)  The Langes respond that the "expected or intended"

1    exclusion only precludes coverage of loss from sexual abuse if the party seeking

2    coverage is the perpetrator.  (Resp. at 19-20 (first citing *Schaffer*, 624 F. Supp. at 1299;

3    and then citing *Corp. of the Cath. Archbishop of Seattle v. Arrowood Indem. Co.*, No.

4    C15-0175MJP, 2015 WL 8212719, at *2 (W.D. Wash. Dec. 8, 2015)).)  Here, they argue,

5    C.L. alleges harm separate from abuse and there is no evidence that Dillon and Colten

6    were insureds during the policy period, so the policy does not exclude coverage for harm

7    Dillon or Colten intended.  (*See id.*)

8        The court concludes that Liberty Mutual reads the exclusion in the Homeowner

9    Policy too broadly.  The policy excludes such harm by "the insured," not "an insured."

10   (*Compare* Homeowner Policy at 11 (emphasis removed), *with* MSJ at 23.)  "When an

11   insurance policy contains an exclusion for 'the insured,' each insured is entitled to read

12   the policy as if applying only to that insured."  *Truck Ins. Exch. v. BRE Props., Inc.*, 81

13   P.3d 929, 933 (Wash. Ct. App. 2003).  "An exclusion for 'an insured' is not restricted

14   to . . . acts of the particular insured sought to be held liable, but broadly excludes

15   coverage for all . . . damage by *an* insured, which includes anyone insured under the

16   policy."  *Mut. of Enumclaw Ins. Co. v. Cross*, 10 P.3d 440, 443 (Wash. Ct. App. 2000)

17   (emphasis in original) (internal quotation marks omitted); *Farmers Ins. Co. of Wash. v.*

18   *Hembree*, 773 P.3d 105, 108 (Wash. Ct. App. 1989) (same).

19       Here, the Homeowner Policy only excludes coverage for harm intended by "the

20   insured," and does not exclude claims against another insured who did not perpetrate the

21   harm.  *See Cross*, 10 P.3d at 443.  Therefore, the Homeowner Policy does not exclude

22   coverage for C.L.'s claims that the Langes each failed to protect her from abuse by the

1   other or their sons.  The Umbrella Policy, by contrast, excludes coverage for harm

2   expected or intended "by any insured."  (Umbrella Policy at 10 (emphasis removed).)

3   Thus, the Umbrella Policy precludes coverage for C.L.'s claims related to Benjamin and

4   Carolyn Langes' intentional acts, as well as her claims against both Langes for their

5   negligent failure to protect her from abuse, because the policy does not cover any losses

6   for harm intended by any insured.  *See Cross*, 10 P.3d at 443; *Hembree*, 773 P.3d at 108;

7   (*see also infra* § III.C.4).  As the court already concluded, C.L.'s negligence claims were

8   not the result of intentional conduct and are not excluded by either policy's exclusion for

9   expected or intended harm.  (*See supra* § III.C.2.)

10          4.  Whether the Umbrella Policy's Abuse Exclusion Precludes Coverage

11          Liberty Mutual argues that the Umbrella Policy's abuse exclusion precludes

12   coverage for all of C.L.'s claims.  (MSJ at 24; Reply at 15-17.)  The court again reviews

13   the terms of the exclusion before resolving the parties' arguments.

14          The Umbrella Policy "does not apply to **personal injury** . . . arising out of any

15   actual or threatened sexual molestation, corporal punishment or physical or mental abuse,

16   including the failure to detect, prevent, stop or report such molestation, punishment or

17   abuse by others."  (Umbrella Policy at 9-10 (emphasis in original).)  Liberty Mutual bears

18   the burden of proving this exclusion applies, *Overton*, 38 P.3d at 329, and the court must

19   strictly construe the exclusion against Liberty Mutual, *Cath. Bishop*, 450 F. Supp. 2d at

20   1201.  Washington courts define the phrase "arising out of" in insurance policies broadly

21   to mean "originating from," "having its origin in," "growing out of," or "flowing from."

22   *Am. Best Food*, 229 P.3d at 698.  "The phrase 'arising out of' is unambiguous and has a

ORDER - 22

1  broader meaning than 'caused by' or 'resulted from.'"  *Toll Bridge Auth. v. Aetna Ins.*

2  *Co.*, 773 P.2d 906, 908 (Wash. Ct. App. 1989).  Conduct does not "arise out of" sexual

3  abuse, however, if it occurs after the abuse and causes new harm or exacerbates the

4  victim's existing injuries.  *See, e.g.*, *Homesite Ins. Co of the Midwest v. Walker*, No.

5  C18-5879BHS, 2019 WL 4034690, at *6 (W.D. Wash. Aug. 27, 2019), *order clarified*,

6  No. C18-5879BHS, 2019 WL 5802048 (W.D. Wash. Nov. 7, 2019).

7      Liberty Mutual argues that all of C.L.'s theories of liability are predicated on

8  allegations that the Langes either abused her or failed to protect her from such abuse.

9  (MSJ at 25-26; Reply at 16 (citing Underlying Compl.).)  According to Liberty Mutual,

10  the exclusion's broad language therefore encompasses each of C.L.'s claims.  (*See* MSJ

11  at 25-26.)  The Langes argue that this exclusion does not apply because first, C.L.'s

12  negligent misrepresentation claim is unrelated to her abuse allegations; and second,

13  C.L.'s allegations of negligence and tortious conduct that post-date the abuse did not

14  "arise out of" the alleged abuse.  (*See* Resp. at 24-26.)

15      As discussed above, C.L.'s negligent misrepresentation claim is not covered by the

16  Umbrella Policy (*see supra* § III.C.1 (noting that C.L. only alleges harm from this claim

17  outside the Umbrella Policy's policy period).)  Thus, the Langes' first argument fails.

18  However, the Umbrella Policy's abuse exclusion does not preclude coverage of C.L.'s

19  negligence claims for incidents after 2008 (1) that did not arise out of abuse or failure to

20  stop abuse by another, and (2) resulted in bodily injury during the Umbrella Policy's

21  policy period.  *Homesite*, 2019 WL 4034690, at *6; (*see also supra* § III.C.1 (defining

22  "occurrence" to include all bodily injuries during the policy period caused by accidents)).

1    C.L.'s allegations that Ms. Lange refused to believe C.L. when C.L. told her about the

2    abuse and urged her to forgive Dillon if any abuse did occur and that the Langes put

3    C.L.'s belongings in garbage bags do not rise to the level of abuse or failure to protect

4    therefrom.  (*See* Underlying Compl. ¶ 4.7; C.L.'s Resp. to Defs' 3d MSJ at 22); *see also*

5    *Standard Fire*, 2020 WL 6083452, at *6-7 (determining that these allegations "may not

6    rise to the level of abuse").  Thus, to the extent C.L. alleges these incidents caused her

7    physical manifestations of emotional distress between May 29, 2015 and July 11, 2016,

8    they are covered by the Umbrella Policy.  (*See supra* § III.C.1.)

9        Liberty Mutual is correct, however, that the abuse exclusion, on its face, excludes

10   coverage for C.L.'s claims that the Langes physically, sexually, or emotionally abused

11   her and that they each failed to protect her from abuse by one another or by their sons.[8]

12   (*See* MSJ at 24; Umbrella Policy at 9-10.)  The Langes' arguments that the alleged

13   "additional negligence and tortious conduct by the Langes after the sexual abuse ended,"

14   did not "arise out of" abuse, and therefore place any of C.L.'s "failure to protect" claims

15   beyond the scope of this exclusion are unavailing.  (*See* Resp. at 24-26 (citing *Homesite*,

16   2019 WL 4034690, at *6).)  The Langes do not identify any facts alleging that the Langes

17   inflicted new injuries or exacerbated C.L.'s existing abuse-related injuries.  (*Compare*

18   Resp. (broadly arguing the conduct occurred after the abuse), *with Homesite*, 2019 WL

19   4034690, at *2 (detailing allegations that the insureds negligently failed to notice the

20

21   _____

22       [8] Whether Colten and Dillon were "insured" under the Umbrella Policy is immaterial; the
     abuse exclusion does not limit its scope to harms arising out of abuse by insured.  (*See* Umbrella
     Policy at 9-10.)

ORDER - 24

1    victim's psychological injuries caused by the sexual abuse and that the insureds' failure

2    to help the victim obtain treatment exacerbated those injuries).)

3        Therefore, the Umbrella Policy does not provide coverage for C.L.'s claims that

4    the Langes physically, sexually, or mentally abused her, or failed to protect her from

5    abuse.  (*See* Umbrella Policy at 9-10.)

6      5.  <u>Summary</u>

7        In sum, the court GRANTS in part and DENIES in part Liberty Mutual's motion

8    with respect to its duty to defend the Langes.  Specifically, the court finds the following

9    claims are conceivably covered by the Homeowner Policy, to the extent C.L. alleges they

10   resulted in bodily injury between May 29, 2015 and May 29, 2018:  (1) C.L.'s NIED

11   claims related to Ms. Lange's reaction to C.L.'s report of abuse and the allegations that

12   the Langes put C.L.'s belongings in garbage bags; (2) claims that the Langes negligently

13   failed to protect C.L. from abuse; (3) claims related to Ms. Lange's negligent

14   misrepresentation in the foster care application and adoption process.  (*See supra*

15   § III.C.1-3.)  The following claims are conceivably covered by the Umbrella Policy, to

16   the extent C.L. alleges they resulted in bodily injury between May 29, 2015 and July 11,

17   2016:  C.L.'s NIED claims related to Ms. Lange's reaction to C.L.'s report of abuse and

18   the allegations that the Langes put C.L.'s belongings in garbage bags.  (*See id.*

19   § III.C.1-4.)  Thus, the court DENIES Liberty Mutual's motion with respect to its duty to

20   defend the Langes against these claims.

21       The court concludes that Liberty Mutual has no duty to defend the Langes with

22   respect to the following claims:  C.L.'s claim for outrage; any claims that the Langes

1    abused or otherwise intentionally harmed her and "engaged in willful and wanton

2    misconduct" toward her; and any claims regarding incidents that did not cause bodily

3    injury during either policy period.  (*See id.*)  The court therefore GRANTS Liberty

4    Mutual's motion with respect to its duty to defend the Langes against these claims.

5    **D.      Whether Liberty Mutual has a Duty to Indemnify the Langes**

6            Liberty Mutual asks the court to enter judgment that it has no duty to indemnify

7    the Langes.  (MSJ at 15, 26-27; Reply at 18.)  The Langes respond that Liberty Mutual's

8    duty to indemnify is not currently before the court because their actual liability has not

9    yet been established in the Underlying Dispute.  (Resp. at 26 (citing *Woo*, 164 P.3d at

10   459).)  The court, however, has already concluded that Liberty Mutual has no duty to

11   defend the Langes from some of C.L.'s claims (*supra* § III.C); where there is no duty to

12   defend, there is no duty to indemnify, *Woo*, 164 P.3d at 459.

13           The court concludes that Liberty Mutual has no duty to indemnify the Langes

14   under either policy for damages for:  C.L.'s claim for outrage; any claims that the Langes

15   abused or otherwise intentionally harmed her and "engaged in willful and wanton

16   misconduct" toward her; and any claims regarding incidents that did not cause bodily

17   injury during either policy period.  (*See supra* § III.C.5.)  Additionally, Liberty Mutual

18   has no duty to indemnify the Langes under the Umbrella Policy for damages for C.L.'s

19   claims regarding:  (1) any injury arising out of sexual abuse, corporal punishment, or

20   physical or mental abuse; (2) any failure to stop or report such abuse; (3) any negligent

21   misrepresentations or omissions to DSHS; and (4) any bodily injury incurred before May

22   29, 2015 or after July 11, 2016.  (*See id*. § III.C.)  Therefore, the court GRANTS Liberty

1   Mutual's motion with respect to its duty to indemnify the Langes against these claims.

2   The court agrees with the Langes, however, that where the court has found a duty

3   to defend, the court cannot assess the extent or existence of Liberty Mutual's duty to

4   indemnify the Langes until their actual liability is determined in the Underlying Dispute.

5   *See Indian Harbor*, 354 F. Supp. 3d at 1215.  Therefore, the court will not determine

6   whether Liberty Mutual has a duty to indemnify the Langes with respect to the following

7   claims, and to the extent C.L. alleges they resulted in bodily injury between May 29,

8   2015 and May 29, 2018:  (1) C.L.'s NIED claims related to Ms. Lange's reaction to

9   C.L.'s report of abuse and the allegations that the Langes put C.L.'s belongings in

10  garbage bags; (2) claims that the Langes negligently failed to protect C.L. from abuse;

11  and (3) claims related to Ms. Lange's negligent misrepresentation in the foster care

12  application and adoption process.  (*See supra* § III.C.5.)  The court DENIES Liberty

13  Mutual's motion with respect to its duty to indemnify the Langes against these claims

14  without prejudice to file a renewed motion after the Langes' liability has been determined

15  in the Underlying Dispute.

16  **E.      Whether the Langes are Entitled to Attorneys' Fees and Costs**

17  The Langes seek attorneys' fees and costs incurred in defending Liberty Mutual's

18  motion.  (Resp. at 26-27 (citing *Olympic Steamship Co., Inc. v. Centennial Ins. Co.*, 811

19  P.2d 673, 681 (Wash. 1991)).)  The Langes argue that they are entitled to fees and costs

20  because Liberty Mutual has compelled them to litigate Liberty Mutual's duty to defend, a

21  "benefit they purchased when they purchased the Liberty policies." (*Id* at 27.)  Liberty

22  Mutual disagrees, arguing that *Olympic Steamship Co., Inc. v. Centennial Ins. Co.* only

1   applies if an insured must litigate in order to obtain the benefit of its insurance policy;

2   here, Liberty Mutual has continued to defend the Langes in the Underlying Dispute.

3   (Reply at 17-18.)

4       *Olympic Steamship* provides that "an award of fees is required in any legal action

5   where the insurer compels the insured to assume the burden of legal action, to obtain the

6   full benefit of his insurance contract, regardless of whether the duty to defend is at issue."

7   811 P.2d at 681.  Thus, an insured who must initiate suit or file a counterclaim against its

8   insurer to obtain an insurance benefit should be awarded *Olympic Steamship* fees.  *See,*

9   *e.g.*, *McGreevy v. Ore. Mut. Ins. Co.*, 904 P.2d 731, 738 (Wash. 1995) (awarding fees to

10  insured who filed declaratory judgment action against insurer and prevailed); *Leingang v.*

11  *Pierce Med. Bureau, Inc.*, 930 P.2d 288, 295-96 (Wash. 1997) ("If a claim is denied on

12  the basis of an alleged lack of coverage and a court later determines there is coverage,

13  then the case would fall under the rule of *Olympic Steamship*.").

14      The Langes cites several cases to support their request but fail to cite any in which

15  an insured received *Olympic Steamship* fees merely for defending itself in a declaratory

16  judgment action while the insurer paid the disputed benefits.  (*See* Resp. at 26-27.)  In

17  each of the cases the Langes cite, the insureds who received *Olympic Steamship* fees

18  prevailed on their own claim or counterclaim.  *See Far Nw. Dev. Co., LLC v. Cmty. Ass'n*

19  *of Underwriters of Am.*, No. C05-2134RSM, 2007 WL 1140262, at *6 (W.D. Wash.

20  April 16, 2007) (awarding fees to insured after insurer breached duty to defend); *Sec. Ins.*

21  *Co. of Hartford v. Sea 'N Air Travel*, No. C05-1062RSL. 2006 WL 1075219, at *1-2

22  (W.D. Wash. April 20, 2006) (awarding *Olympic Steamship* fees to insured who

1    prevailed in its counterclaim regarding insurer's duty to defend); *Heringlake v. State*

2    *Farm Fire & Cas. Co., Inc.*, 872 P.2d 539, 550 (Wash. Ct. App. 1994) (declining to

3    award fees where no coverage existed).  In *Heringlake v. State Farm Fire and Cas. Co.,*

4    *Inc.*, the court opined that, "it is obvious that one is entitled to fees under *Olympic*

5    *[Steamship]* only if the party seeking fees prevails on some claim."  872 P.2d 539 at 550.

6    Here, although the Langes have partially succeeded in defending against Liberty

7    Mutual's summary judgment motion, they have not "prevail[ed] on some claim," *see id*.,

8    because they have not affirmatively requested—much less obtained—any relief from this

9    court (*see generally* Dkt.).  *See also, e.g.*, *Texas State Teachers Ass'n v. Garland Indep.*

10    *Sch. Dist.*, 489 U.S. 782, 791 (1989) ("A prevailing party must be one who has succeeded

11    on any significant claim affording it some of the relief sought.").

12      In the absence of any authority awarding *Olympic Steamship* fees to an insured

13    who does not prevail on their own claim or counterclaim, the court declines to extend the

14    doctrine beyond its current application.  Accordingly, the court DENIES the Langes'

15    request for attorneys' fees and costs.

16                     **IV. CONCLUSION**

17      For the foregoing reasons, the court GRANTS in part and DENIES in part Liberty

18    Mutual's motion (Dkt. # 52).  The court GRANTS the Langes' motion to strike (Dkt.

19    # 60) and DENIES their request for attorneys' fees and costs (Dkt. # 56).  The court will

20    not enter a schedule for trial and related deadlines at this time.  Instead, the court

21    DIRECTS the parties to submit a joint status report by no later than **January 22, 2024**, or

22    within 14 days of the resolution of the Underlying Dispute, whichever is sooner, and

1  every six months thereafter.  Within 14 days after the Underlying Dispute is resolved, the

2  parties are ORDERD to submit a joint status report identifying a deadline for subsequent

3  dispositive motions, if any, a proposed trial date, and anticipated length of trial.

4       Dated this 24th day of July, 2023.

5

6  _____

7  JAMES L. ROBART
   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22